Good morning, and may it please the Court. My name is Sean Conway, and I represent the appellant, Kirstie Wade. The issue in this case is about personal jurisdiction, about whether a Nebraska court can exercise jurisdiction over Nebraska state law claims against an Iowa defendant when that defendant's activities, their actions, are the proximate cause of an accident and injuries that occur in the state of Nebraska. The facts in this case are really not in dispute for purposes of this appeal. On August 22nd of 2020, Pottawattamie County Sheriff's deputies were pursuing a fleeing motorist in Pottawattamie County, Iowa. They were, for nearly ten minutes and in broad daylight, traveling in excess of speeds of 100 miles per hour, attempting to stop this fleeing motorist, a white Hyundai. They traveled through highways. They deployed stop sticks on a couple of different occasions, and still this vehicle wouldn't stop. The officers traveled sometimes in the opposite lane of traffic, weaving in between vehicles. At one point, they enter on to I-80 westbound in the direction of the Iowa-Nebraska border across the Missouri River. Deputies continue to pursue. After they pass all available exits to other Iowa highways, they get on to the bridge separating Iowa and Nebraska. Then, and only then, does a sergeant with Pottawattamie County direct those deputies to terminate the pursuit about 420 or 40 yards away from the Nebraska border, about a quarter mile. At that point, that means to the deputies that they deactivate their lights and sirens. What they don't do is pull off to the side of the road or slow down to the flow of traffic. And that brings me to the question when you said the facts weren't disputed. And I wonder if there isn't a fact question that you would have to kind of figure out what exactly the standard of review on it. And that is that Judge Roster made a finding where he said that pursuit stopped. And then a little while later, he says, well, pursuit at least slowed down. And is that a fact? Are those fact findings? And if so, what exactly is the fact finding? And if it is a fact finding, do we review that for clear error because it's a jurisdictional fact that's been found rather than a legal conclusion perhaps? Because maybe pursuit is a legal conclusion. I'm, you know, but it sounds like it's a fact. But I'm just curious how we do that. Judge Erickson, that's an excellent question I think gets to the core of the issue, which I do believe that you're reviewing this case de novo. I do believe that the pursuit itself and the videos that were offered in evidence that are before this Court show that that vehicle is driving in excess of the flow of traffic. Did it slow down? Perhaps. Did it slow down to the flow of traffic? It absolutely did not. And the district court's ruling, their findings, fundamentally misunderstand the activity of Pottawatomie County. You cannot view Pottawatomie County's activity in so narrow a way that the pursuit is terminated at that moment that Iowa deputies decide to turn off their lights and sirens. Because there's this set of circumstances that's been set into motion, a domino that's been pressed against another domino that results in this fleeing motorist, now with two tires that have been removed from his vehicle as a result of the stop sticks and what Pottawatomie County did, that is traveling like a missile into the State of Nebraska. So once that occurs, once they've set that into motion, until that fleeing motorist reasonably believes that that pursuit has been terminated, once there's that sufficient opportunity, Pottawatomie County arguably is still that proximate cause of that collision. They still have – they still have – Suppose, though, I want to – I just want to press you a little bit. Suppose, though, that they couldn't turn off, it wasn't safe to do so, they turn off their lights and siren, and clearly they slow down to the flow of traffic and then get off at the first one. Same accident, the guy still thinks he's being chased, and so you end up having the same accident. Is there personal jurisdiction in your view in that case? I think that those are – I think that those are different circumstances. Oh, I agree. And I think that it's a stronger case that personal jurisdiction cannot be exercised by a Nebraska court in that circumstance. Here what we have – I mean, context is what's most important here. We have a 10-minute chase. We have a 10-minute chase through Pottawatomie County, Iowa, directly leading to the Nebraska-Iowa border. We have deputies who are well aware of where they are. This isn't some back highway or dirt road that they're traveling on in rural Pottawatomie County. This is Interstate 80 leading from the border. They know exactly where they are. It's no accident that they decided to terminate the pursuit just about 440 yards before the Nebraska-Iowa border. They knew what they were getting themselves into. They knew what they were getting themselves into when they were on the Iowa freeways traveling westbound towards Nebraska. Sergeants were aware of that. They were communicating over the radios, not only with other Pottawatomie County deputies, but between other law enforcement agencies, including ABLE 1 from Nebraska. So it sounds to me like really what you're hanging your hat on, if that's a harder – at least a harder case, is the fact that they continue – it gets back to Judge Erickson's question. They continue to, you know, sort of chase. Even though the pursuit, the lights and the siren were off, they still were sort of still trying to keep him in their sights so that they could eventually stop him. I think that is one of the factors. I think the other – and I understand that you may have a bit of a background in Federal jurisdiction as well – I think equally as important is that this isn't just a matter of – of Pottawatomie County deputies purposely availing themselves to the State by their activities that I described for 10 minutes. But in this case, it's even stronger. They actually went into the State of Nebraska. They actually went and got off on the very same exit, the first exit, in the State of Nebraska that the fleeing motorist did, 13th Street, where the accident occurred, where Kirstie Wade and her three children were severely injured as a result of the fleeing driver's behavior. But is that – is that really – I mean, maybe – maybe it gets you there. But what if, you know, they're – they realize, oh, my goodness, we're about to cross in. They slow down again. They take their lights off. And then they have no real option to turn around. I mean, it's hard to turn around in the middle of a highway. And so they go to the only safe place, which is that first exit. So I'm not sure – I'm not sure that – I mean, had they gone to the second exit, third exit, or fourth exit, that might be a different case. But the first exit, I'm just not sure how much that tells us about – about purposeful availment. I think what it tells us is they are still trying to – to – to keep that motorist in their sights. I think they want to know where he is. I think they want to hand this off. They want to hand the baton to Nebraska law enforcement. But they definitely want to know where this guy is, right? I mean, that's why they get off on the 13th Street exit. So your argument essentially is they're still going slightly above the speed of the flow of traffic, no matter what, if you watch the video. They are moving lanes to always keep a line of sight on the car. They – when they leave the exit, they're close enough to the vehicle that as they exit, there's dirt thrown up because the – the lead car had to have left the road and get on the shoulder with the two tires that are not tires. And so the rims throw up all this dust, and there's this cloud of dust that they drive through. And that that's all evidence of pursuit, and that's sufficient to say that they were availing themselves in Nebraska. They purposely directed their activities toward the state of Nebraska. Do we have to care at all about what other contacts that Pottawatomie County may have with the state of Nebraska? If you look at the first two prongs of our specific jurisdiction analysis – because the record, of course, is there's a paucity of evidence that says, well, you know, Pottawatomie County transacts business on a regular basis in Nebraska that they have sued and been sued previously in the state of Nebraska. And since these are adjacent counties, it's possible that that would happen. I mean, I live in a border city, and you know, cities in Minnesota have answered lawsuits in North Dakota at different times. And so they may have a history of availing themselves of the protection of the Nebraska courts. Now, none of that's here, and is that something that the district court should have been concerned about or the evidence should have been presented, or is that all just a red herring that Ralph invented in his brain? I think, Judge Erickson, that it's not a red herring. You know, convenience of the parties is certainly one of the factors that we look at in the minimum contacts analysis, right? That's the fifth factor. What is the convenience of the parties? Here we have Pottawatomie County, Iowa, bordering Douglas County, Nebraska. They're right next door to each other. We're not alleging general personal jurisdiction in this case, that they are subject to Nebraska courts because of some general contact that Pottawatomie County has with Omaha. It is as a result of specific personal jurisdiction. It's as a result of this particular circumstance. To sort of highlight the point about why this — that the district court was just wrong on the issue of personal jurisdiction in this case is to think about the contacts that Pottawatomie County had in another way. Let's say they terminated the pursuit just as they did a quarter of a mile before the border separating Iowa and Nebraska. They're about 440 yards. The welcome to Nebraska sign is still plainly evident in the — in the cruiser camera video. We can see it. But they stop. And let's say they actually pull off to the side of the road. But let's say that fleeing motorist, this Trevor Carmens driving the white Hyundai, collides with a vehicle just on the other side of the border, 10 feet into Nebraska. Would we be sitting here and arguing about whether or not there was — there was personal jurisdiction in the State of Nebraska? I think — I think the natural inclination is to think that's a — that's a strong case, right? That's — we have the site of injury in Nebraska. We have the — the pursuit terminated just right here. And — and the accident occurs just right here on the other side of the border, right? There's diversity of jurisdiction. But that's exactly the point. That goes to the strength of the claim. It goes to the strength of the plaintiff's claims, not to whether or not there's personal jurisdiction at all. On that point, what does Walden v. Fiore say about all of this? Because it talks about with non-residents, it must be based on the context. And so in — I think in your example, the officer has actually crossed into the State and directly caused the accident. Well, that's kind of something that Walden says is okay. I'm not sure if Walden necessarily says that this is okay if it happens — you know, if you cause something across the border. And that's fair. And may I answer your question, although I'm in my rebuttal time as well? Sure. Yeah. Yes. Certainly, the deputy's presence inside the State of Nebraska, as I believe Walden states, is — is a relevant factor. That's something that's certainly important. And here we have it. I mean, this is the strongest possible case in many ways. We actually have the Pottawatomie County deputy present in the State of Nebraska. And it's important to remember that the — the standard is whether or not the plaintiff's claims arise out of or relate to Pottawatomie County's contacts. We're not talking about a strict but-for causation approach. The Supreme Court has explicitly rejected that approach. It's just, is there some connection between Pottawatomie County and — and Nebraska so that the plaintiff can make that threshold showing to file suit in the forum State? With that, I would reserve my remaining time for rebuttal. Thank you. Mr. Livingston, when you're ready. Thank you, Your Honors. May it please the Court. I'm Robert Livingston. I'm here for the appellee, Pottawatomie County. First of all, I want to talk about burden and apologize. The County's brief speaks in terms of the burden of proof for plaintiff in terms of prima facie showing. The District Court got it right after making an evidentiary hearing and said that as a result of creative calling solutions, it should be preponderance of the evidence. And while it's mentioned in our brief, it's not directly called out. I'm going to speak in terms of prima facie and probable cause in the same way. I think there are very similar in that in this instance, the party submitted evidence, a plaintiff having the burden to show personal jurisdiction. And unlike a motion to dismiss where we look at the four corners of the complaint and the well-plaid facts under Iqbal Twombly, we've got evidence to look at. So here under the prima facie showing, looking at the evidence or after the Court conducted its evidentiary hearing, which produced no additional evidence against them, which was already submitted for the prima facie showing. So the effect is that the Court should affirm under either standard of proof, be that prima facie showing or under a preponderance of the evidence. It's that Ms. Wade has not set forth sufficient facts to establish personal jurisdiction of Pottawatomie County in Nebraska. The record review de novo, watching those videos, which it sounds like you guys have done, shows that ... I'm just going to ask about that because I'm still kind of, I know that we have de novo review. I also know that jurisdictional facts are found by the United States district judge. What I'm not sure about, and I'm sure that at some point I'll be enlightened either by my research or my colleagues, is that once the judge, the district judge, makes those findings of fact, and don't we review those jurisdictional facts that have been found for clear error, even though we're doing a de novo review? I think either fast path or creative calling solution speaks to the review. Once an evidentiary hearing is done, it's like summary judgment. Yeah, and that would be, you know, at the summary judgment level that, you know, the findings of fact have to be clearly erroneous and we review the questions of law de novo. Yes. Okay. And, you know, I don't want to ask the court to second guess the district court on its review of those videos, but they speak for themselves. It's a nice clear record where we, as was said earlier, there's no question of how things actually shook down. Well, let me ask you about the video, which is ... I'll tell you just right off the bat, the thing that makes this different from the series of hypotheticals that I asked to pose in counsel is you have them slowing down, you have them taking the sirens and lights down, but what you don't have is them slowing down to the point of going with the flow of traffic. And so it seems to me like there may have been no formal pursuit, but they definitely wanted to keep an eye on him so that perhaps the Nebraska authorities could take over or whatever. And to me, that's, I mean, that makes that different from the case where they're just trying to turn around, which is a harder personal jurisdiction case. My recollection of the video is that they slowed, they changed lanes to the slow lane, to the right lane. I think it's an overstatement to suggest they're trying to keep eyes on this vehicle. But they still pass two separate vehicles at that point. After they slow, Officer Windham passes two different vehicles and then exits at the first exit. And there's a continued traffic flow report going back to dispatch about where the vehicle is, what they're seeing, where they're exiting, all of which seems like they're still doing law enforcement stuff other than just driving down the street stuff. And so I think it's a close question. And you obviously don't, so I'd really like you to just give me your best argument why none of that other stuff matters, the passing and the continued radio contact. Well, one of the things to consider is because this is jurisdiction, specific jurisdiction, the contacts with the state have to relate to the plaintiff's cause of action. The plaintiff's cause of action is based solely on a Nebraska statute that makes strict liability for high-speed chases applicable only to Nebraska political subdivisions. And so the general gist of there was a big, long chase in Iowa, or heck, it could have been in Des Moines or just south of the Minnesota border, it's of no consequence. But doesn't it still apply to, I mean, don't negligence actions survive that? Well, the negligence action as pled is derivative of the statute that the plaintiffs rely on. And I get where you're going because I remember the complaint and I think about what it says, but I wonder if, just change the facts entirely, two private parties decide to engage in a high-speed race down I-80, traveling in excess of speeds of, you know, 100 miles an hour. One of the tires, one of the car takes an abrupt turn, damages the sidewalls of each tire, thereby causing the tread to separate, so they end up with two tires that are not tires, driving on rims. So it's exactly kind of the same situation, but they're two private parties. They chase into Nebraska and at the Nebraska state line, the driver with all four wheels decides that, man, this is dangerous, I'm going to slow down. And they just slow down and then the traffic's exactly the same. Wouldn't that negligence action against both drivers still survive if you're an independent person who gets injured in this situation? Yeah, provided the cause of action is not based upon the high-speed chase statute that the plaintiffs rely on. And there is no ordinary negligence alleged in the complaint? That's the second cause of action, but in that cause of action, it specifically refers to the high-speed chase statute as the basis. Well, but I just want to follow up on this really good. The high-speed chase statute, though, is sort of a merits question. So I don't understand how that affects the personal jurisdiction calculus. I mean, we could say, for example, there was personal jurisdiction and then the district court could say on remand, well, but the high-speed chase statute, we've got to dismiss this thing. Am I looking at that? I just don't understand how that affects personal jurisdiction. Well, it just affects personal jurisdiction because in the specific jurisdiction context, the evidence to support personal jurisdiction has to relate to the cause of action. And the cause of action, using that statute to look at conduct that was done all in Iowa, it's not applicable to anything done in Iowa. Iowa doesn't have a high-speed chase statute. They use a reasonableness standard. So you have to look at what conduct, and it cuts off everything up to the border is what I'm saying. So the stuff that you can look at would start at where the Nebraska border is. And then as it relates back to your point that they slowed, but they didn't slow to the speed of other traffic, they were coming at it at a hundred and some miles an hour. It's not something you can instantly turn off and go 60 miles or 55, whatever it is there. But on that point, if you're right and they try to sue, for example, somebody in Nebraska and it says you can't sue a subdivision in Nebraska, let's say, then there would be no personal jurisdiction in Nebraska under your view. Because you're essentially conflating the merits question with the personal jurisdiction question. I don't think that can be right. Then I must be wrong. There's still two of us here. You don't have to concede that yet. Yeah, there you go. Well, I just wanted to follow up on what Judge Strauss was asking. I think the jurisdiction question is hard in this case. But, you know, we have these high-speed cases, the high-speed chase cases from time to time. And they're sometimes brought in the context of Section 1983 litigation. And if this were brought as a 1983 case against Pottawattamie County, could it be brought in Nebraska? What federal question? It would be due process, substantive due process or something? Well, I think the same analysis would apply. First, we have to determine whether there's personal jurisdiction. And we have to make sure that the contacts with the state relate to that cause of action. It may be different in my mind if it was a 1983 cause of action, just because the underlying statute's just not applicable to Pottawattamie County. Now, you have argued in your brief that we could affirm on the alternative grounds that the statute doesn't apply. I did. I did. I don't think that's a favored mechanism for the Court. But I think that it is a viable one, because it's the only cause of action that was pled. And it's just by its own textual standard inapplicable, because Pottawattamie County is not a political  county. That statute, as I am going to assume, is based upon a good reason to help protect innocent persons and give them a source of recovery and put that burden on the taxpayers. Here, if it's used against Pottawattamie County, it would be implying the other state statutes, possibly, to all conduct and that high-speed chase happening in Iowa. And we haven't argued choice of law yet, if it comes to it. But it seems problematic to apply Nebraska's statute to Pottawattamie County in a separate jurisdiction for conduct, largely done in Iowa, with the random, fortuitous, or attenuated connection with Nebraska having continued on, because this is a bridge over the Missouri River that doesn't permit people to have another alternative to reasonably turn around. The record, I think, clearly shows from both the videos and the affidavits that the sergeant called off the chase by radio. They turned off their lights. They slowed. They turned off their sirens. The two first deputies were in a position that they couldn't turn around and continued on. What I haven't heard from plaintiffs yet is there's a third deputy that was way, way, way back there. And eventually he just continues on through. And he could have turned off on 29 at that time, but he continued through after the call, came back to the sergeant saying, hey, there's been a wreck and we want to render aid. And so the rendering of aid, that's the attenuated contact that isn't good enough to, well, first of all, it doesn't satisfy the specific personal jurisdiction. It doesn't rise out of the cause of action. He's just coming through to provide more aid. And then they don't follow the suspects. They render aid and they leave. And as a result, the evidence established, Pottawattamie County purposely availed itself of the state of Nebraska and the district court should be affirmed on its ruling. Or alternatively, it should be affirmed because plaintiff's cause of action does not apply to Pottawattamie County. I just have one quick question and just something that kind of pops my mind, so to speak. When we have these situations where you have two fairly sizable municipalities adjoining each other on a state line, you know, could be up and far going with Moorhead, is that the name, across the line? Are there ever any kind of inter-city or inter-agency agreements? I mean, this can't be the first time a car has sped across the Missouri River from Iowa to Nebraska or Nebraska to Iowa. Is there any agreements or any kind of inter-agency cooperation statutes or, I guess, agreements? The record is absent of anything of that nature. I, as you do, suspect that might be the case. There's the Hot Pursuit Statute, 29.416, and the definition of what that is, 29.417. Yes. And that statute is exactly why we say the high-speed chase statute doesn't apply because the Nebraska legislature could have said, hey, you subscribe to personal jurisdiction if you come into our territory, like they did with that felony statute, but they didn't. And so, we would ask that the district court be affirmed. Thank you, Your Honors. Your rebuttal, Mr. Connolly. It's easy to get lost in the thicket of the merits question related to the claims versus what we're actually talking about here today, which is personal jurisdiction over any of plaintiff's claims at all. And as Judge Strass noted, getting to the merits question, while it's easy to conflate the two here, when we're talking about the Hot Pursuit Statute and the trajectory of the actions of Pottawatomie County, is really not what's critical to this Court's analysis. What's critical is whether or not plaintiff's claims, whatever they may be, arise out of or relate to Pottawatomie County's activity on this particular date, their actions. Can I ask you, though, there was one interesting point that I think is important that we can't miss. Is the negligence claim actually derivative of the Nebraska statute? Because then I think there's a good argument. No, it is not. The negligence claim is not pread as derivative of 13-911. It's that Pottawatomie County failed to adhere to the relevant regulations or standards as it applies to vehicular pursuits in their situation. A lot of law enforcement agencies, perhaps you've seen these in other appeals involving vehicular pursuits, have a matrix, right? And this isn't in the record, of course, but that's ordinarily the case, that law enforcement, when there's training on these issues, has a matrix of less traffic, moderate traffic, high traffic. Nighttime, daytime, you know, you name it, right? And then when pursuits should be called off. So the negligence action is not specifically related to 13-911. The most important thing that I think to note here, at least one of the most important things, is one of the final things that Mr. Livingston talked about, and that was the actions of Deputy Harker, who was trailing Deputy Windham. Now, unlike Deputy Windham, who's thrown up his hands to say, look, I didn't have the opportunity to turn around. I was already at the Nebraska-Iowa border. What else could I do but go in and turn around on 13th Street? Deputy Harker was actually behind the I-29, I-80 interchange, which he could have turned off to go to another part of Iowa. He did not have to go into Nebraska. He chose to continue on into Nebraska, across the I-80 bridge, before he ever knew that there was a motor vehicle collision. That's important in this case, because that shows the intentions of the defendants here. The intention is not to simply turn around on 13th Street. The intention is to get the bad guy until they can hand the baton off to Nebraska law enforcement. I want to get back to Judge Strauss' question, briefly, about the nature of the negligence claim. It seems like the county is putting a huge emphasis on the last clause of your one-paragraph pleading of negligence, saying, assuming all the facts in 1 through 16, then we go with our one compliance with relevant and applicable regulations concerning motor vehicle pursuit by law enforcement. That could be viewed two different ways. In my old world as a plaintiff's lawyer, I could look at that and say, what that is, is it's a general negligence claim for which you're trying to lay the framework for making a subsequent claim of negligence per se, or it could be just a restatement of the first claim. How do you see it as the plaintiff's lawyer? Your Honor, I see that I'm just about to run out of time. May I extend to answer your question? You may. The latter, not the former. This is a claim that's the former, not the latter. That is, that we believe the pleadings are sufficient to allege a general negligence claim that Pottawatomie County did not, in fact, comply with the applicable regulations. Of course, pleadings can be amended if they need to. That, of course, is not a personal jurisdiction question, right? We're here about whether or not these claims arise out of and relate, not whether or not the claims themselves should be survived, which is also why the district court declined to grant defendants motion to dismiss under 12b-6. They did not address that claim. Thank you very much. Thank you.